UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HOYT F. RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 09-CV-3071 |
| | ) | |
| WEXFORD MEDICAL GROUP and | ) | |
| DR. SHAH,[1] | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se, pursues claims against Dr. Shah and his employer arising from alleged deliberate indifference to Plaintiff's shoulder injury. Now before the Court is Defendants' motion for summary judgment. As explained below, no rational juror could find that Dr. Shah was deliberately indifferent to Plaintiff's shoulder condition.

---

[1] On May 13, 2009, Judge Harold A. Baker dismissed Defendants Brown, Kayira, Walker, Bryant, and Walls. (5/13/09 text order). The case was transferred to this Court in September 2011, after briefing on the summary judgment motion was completed. (9/16/2011)

1

Accordingly, the motion will be granted.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

## FACTS

Plaintiff is 56 years old and currently incarcerated in Pinckneyville Correctional Center.

In July 2006, Plaintiff injured his right shoulder while doing bench presses at Graham Correctional Center. His shoulder "made a popping sound," and then he could no longer lift the weights. (Plaintiff's Dep. p. 8). He went to healthcare that day and was given ice and Motrin. According to Plaintiff, an x-ray was taken at the end of July which showed no injury. (d/e 44, p.2). He asserts that this x-ray and other relevant medical records from July to September 2006 were all missing from Defendants' production of medical records, but that issue is immaterial. The Court accepts Plaintiff's version even without

corroborating medical records.

Dr. Kayira saw Plaintiff in September 2006. Dr. Kayira's records from that date note a slightly limited range of motion in all planes. The diagnosis was "chronic right shoulder pain and probable osteoarthritis." (Dr. Shah Aff. ¶ 5). X-rays were taken near the end of September 2006, which showed no abnormalities. (Exhibit 2 to Dr. Shah's affidavit). Plaintiff saw Dr. Kayira in October 2006, for continued pain in his shoulder. Dr. Kayira diagnosed "chronic right shoulder pain and stiffness probably secondary to bursitis. Dr. Kayira prescribed medication and directed the Plaintiff to continue the present plan of care and exercises and return as needed." (Dr. Shah Aff. ¶ 8). The next month Dr. Kayira noted in the medical records that Plaintiff had a "strained right shoulder scapular muscle." (Dr. Shah. Aff. ¶ 9). Plaintiff's pain continued and more x-rays were taken in March 2007, again showing "no fractures or acute boney abnormalities." (Exhibit 9 to Dr. Shah's Aff.). In April 2007, Dr. Kayira apparently prescribed a muscle relaxant, which did not help. On June 26, 2007, Dr. Kayira diagnosed the problem as

fibromyalgia and prescribed prednisone. The prednisone did help somewhat with the pain. In January 2008, Dr. Kayira again saw Plaintiff for his shoulder, this time diagnosing osteoarthritis. (Dr. Shah Aff. ¶ 29).

Plaintiff was transferred to Western Illinois Correctional Center at some point, where he saw Dr. Brown in May 2008. Plaintiff was suffering from kidney stones at that time, but he also complained to Dr. Brown about his shoulder. In July 2008, Dr. Brown diagnosed Plaintiff with osteoarthritis, prescribed pain medicine, ordered another x-ray, and scheduled a "collegial review" to be held after the x-ray results were received. (Dr. Shah's Aff. ¶¶ 33-34). This x-ray report showed "no fracture or acute boney abnormality" but did show "hypertrophic changes of the AC joint." (Dr. Shah's Aff. ¶ 36). According to Defendant Dr. Shah, who began seeing Plaintiff in October 2008, "[h]ypertrophic changes means that the x-rays reveal that the joint was exhibiting enlarged areas consistent with arthritis." Id. at ¶ 28. In August 2008, Dr. Lochard gave Plaintiff two steroid injections and prescribed

prednisone, which improved Plaintiff's symptoms.

Defendant Dr. Shah first saw Plaintiff on October 23, 2008, at Western Illinois Correctional Center. Dr. Shah diagnosed Plaintiff with right shoulder pain and prescribed him the pain medicine Ultram and a low bunk permit. (Dr. Shah Aff. ¶ 30). Plaintiff testified that Dr. Shah told Plaintiff "he didn't care how much pain I was in or how bad my shoulder was injured, that he wasn't sending me for an MRI and I was just gonna' have to live with it." (Plaintiff's Dep. p. 17).

Shortly thereafter, Plaintiff experienced chest pain and was kept in the infirmary for over three weeks for monitoring. Plaintiff contends that he continued to complain about his shoulder to the nurses during this time, but he does not appear to dispute that no complaints are recorded in his medical records. Dr. Shah saw Plaintiff in March 2009 for a follow-up stress test relating to the chest pain. Dr. Shah continued Plaintiff's medications at this time.

After May 2009, Plaintiff was no longer under Dr. Shah's care. Plaintiff was transferred to Pinckneyville Correctional Center in June

2009.

Dr. Shah avers that "[i]n my evaluation, Plaintiff's right shoulder problems are arthritic in nature. In other words, there is little that can be done other than managing the Plaintiff's pain. I did my best to manage the Plaintiff's pain with medications at all times at the Western Illinois Correctional Center." (Shah Aff. ¶ 40).

## ANALYSIS

Deliberate indifference to a serious medical need violates a prisoner's right under the Eighth Amendment to be free from cruel and unusual punishment. Hayes v. Snyder, 546 F.3d 516, 522 (7th Cir. 2008). The medical need must be objectively serious, meaning "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id., quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). An objectively serious need also presents itself if "'failure to treat [the condition] could result in further significant injury or unnecessary and wanton infliction of pain.'" Reed v. McBride, 178 F.3d

849, 852 (7th Cir. 1999)(quoted cite omitted); Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)("The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'") (quoted cite omitted).

A serious medical need can be inferred from Plaintiff's own description of his pain in moving his shoulder, as well as the doctors' prescriptions for pain medicine. Thus, this case hinges on whether a rational juror could find that Dr. Shah was deliberately indifferent to that serious medical need.

Deliberate indifference does not encompass negligence or even gross negligence. McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010). Deliberate indifference requires personal knowledge of an inmate's serious medical need and an intentional or reckless disregard of that need. Id.; Hayes, 546 F.3d at 524. Malpractice or professional disagreements over the best treatment are not Eighth Amendment violations. Steele v. Choi, 82 F.3d 175, 178-79 (7th Cir. 1996).

However, deliberate indifference may arise if the doctor's decision is "'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)(citation omitted). Additionally, a "dogg[ed] persist[ence] in a course of treatment known to be ineffective" can amount to deliberate indifference. Greeno v. Daley, 414 F.3d 645, 655(7th Cir. 2005).

On this record no rational juror could find that Dr. Shah was deliberately indifferent. Dr. Shah was responsible for Plaintiff's medical care for, at most, only seventh months. Much of the time Dr. Shah was at Western was spent focusing on Plaintiff's chest pain problems, which obviously presented the more serious condition, even to a layperson. Plaintiff's shoulder problem started more than two years before he saw Dr. Shah and had been treated conservatively with pain medication and exercises by every doctor who had seen Plaintiff, an approach continued by Dr. Shah. Plaintiff offers no competent evidence to counter Dr.

Shah's assessment that Plaintiff has arthritis, a condition for which the prescribed treatment is pain management.  Plaintiff does not dispute that Dr. Shah tried to help with Plaintiff's pain by prescribing pain medicine.  He also prescribed a low bunk for Plaintiff.  Even if Dr. Shah made the remarks claimed by Plaintiff, Dr. Shah's actions belie any inference of deliberate indifference.

   Plaintiff argues that Dr. Shah failed to review the x-rays, which Plaintiff believes show that a referral for an MRI was necessary to get to the bottom of Plaintiff's pain.  Plaintiff draws this conclusion from the 2008 x-ray showing "hypertrophic changes," a condition not mentioned in the two prior x-rays.  According to Plaintiff, the hypertrophic changes would not have occurred but for some underlying structural problem with the shoulder that cannot be seen by x-ray.  However, he has no evidence to support these conclusions.

   Plaintiff contends that both Drs. Kayira and Brown told him that if his condition did not improve they would send him for an MRI.  He also contends that Drs. Kayira and Brown told him that a collegial review was

required before an MRI could be ordered. According to Plaintiff, he was transferred to a different prison before either of these things could occur.

However, Plaintiff points to nothing in the record indicating that an MRI was considered by any doctor, much less ordered. Plaintiff's testimony about what these doctors purportedly said to him about an MRI is inadmissible hearsay. MMG Financial Corp. v. Midwest Amusements Park, LLC, 630 F.3d 651, 656 (7th Cir. 2011)("A party may not rely on inadmissible hearsay to avoid summary judgment."). Further, even if some doctors felt an MRI would be a useful diagnostic tool, Plaintiff has no evidence that Dr. Shah's decision not to send him for an MRI was a "'substantial departure from accepted professional judgment.'" Roe, 631 F.3d at 857 (7th Cir. 2011)(citation omitted).

In short, Dr. Shah did not violate Plaintiff's constitutional rights because he was not deliberately indifferent to Plaintiff's shoulder condition. Since there is no underlying constitutional violation, Dr. Shah's employer cannot be liable for any alleged unconstitutional policy. Sallenger v. City of Springfield, 630 F.3d 499, 505 (7th Cir.

2010)("[B]ecause there is no underlying constitutional violation, the City cannot be liable under Monell.").

IT IS THEREFORE ORDERED:

1) Defendants' motion for summary judgment is granted (d/e 39). The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the

appeal.

ENTERED: March 7, 2012

FOR THE COURT:

<u>s/Sue E. Myerscough</u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
